There is no aspect of the case in which the defence can be available. There has been no eviction, actual or constructive. No action has been brought against the defendant to effect an eviction ; nor does there appear to be any ground upon which his title under the deed can be disturbed.

The complainant is entitled to the relief prayed for.

CITED *in Conover* v. *Stillwell,* 5 *Vroom,* 59.

---

WILLIAM E. BIRD and JAMES C. GODFREY *vs.* JEHU H. DAVIS and WIFE and MARGARET HOAGLAND.

The rule is well settled, that where a partial payment is made by a person indebted on more than one account, if there has been no actual appropriation by the debtor, at or before the time of payment, the creditor may apply it as he pleases.

A bill for board, or any other demand that the debtor may have, cannot be set off against a mortgage debt upon proceedings for foreclosure, ex-

cept by consent of the complainant or by agreement of the parties for that purpose.

After forfeiture of a chattel mortgage, the mortgagee in possession may make sale of the chattels mortgaged upon due notice thereof to the mortgagor. But the creditor will be held, at his peril, to deal fairly and justly with the property, both as to the time of the notice and the manner of the sale.

The disposition by the mortgagee of a part of the chattels at private sale was unauthorized ; and although it appears that the mortgagees took great pains to secure the best prices practicable for the goods, and that they were sold for their value, and that the mortgagor assented to the prices obtained, yet if defendant can show before the master that the articles were sold unfairly or at an under price he will be permitted to do so, and will be allowed their fair value.

In this case the land covered by one of complainants' mortgages was devised to the grantors of the mortgagors subject to a provision in testator's will, by which he gave to his wife, M. H., the one half of the yearly income of all his real estate, to be paid to her yearly by the persons to whom the real estate was devised, being given in lieu and instead of her right of dower. M. H. was made a party to the suit as a prior encumbrancer. *Held* that, were it otherwise doubtful whether the provision for the widow constitutes a charge on the lands devised, the fact that it was given in lieu of dower would be decisive of the question.

The land must be sold subject to the charge of the annual payments hereafter to accrue to the widow during her life ; and she is also entitled to receive out of the proceeds of the sale of the estate of the devisees in the land the arrears (if any) remaining unpaid.

When the complainant produced a receipt signed by M. H. in full of her right in the land up to the time of filing the bill, *held* that, as against the tenant, it may be shown that in point of fact the money mentioned in the receipt was not paid.

If the original loan had been obtained upon the faith of this receipt, or if it had been used to obtain an extension of credit, or in any other way to influence the conduct of the complainants, and the complainants had given credit on the faith of the receipt, it would have operated as an equitable estoppel to prevent the party giving it from gainsaying its terms to the prejudice of complainants' rights.

If the receipt in no way influenced the conduct of complainants, or operated to their prejudice as mortgagees, it is not conclusive against the party signing it. She will be at liberty to prove before the master the arrears actually due and unpaid to her. The giving of a note by the devisee or his grantee for the arrears due, and taking a receipt therefor, did not of necessity operate as a discharge of the encumbrance on the land.

The testimony of a husband, testifying in behalf of his wife in a cause in which she is a party, is incompetent.

The rule excluding husband and wife from being witnesses for or against each other does not rest solely or mainly upon their identity of interest, but upon grounds of public policy. Their competency as witnesses is not affected by the act of 1859, (*Nix. Dig.* 558). That act was designed solely to remove the disqualification resulting from interest in the event of the suit.

Upon a bill to foreclose, the mortgagor cannot dispute his title to the mortgaged premises. The decree will bind his interest, whatever it may be, and nothing more.

A decree upon a mortgage executed by the husband alone will not bind the separate estate of the wife, although the wife is made a defendant, and has joined with him in an answer. The rule is, that if the husband and wife join in an answer as co-defendants, it will be considered as the defence of the husband alone, and it will not affect a future claim by the wife in respect of her separate interest.

Nor would the opinion of this court upon the question of title bind the purchaser under the decree. He would take the title of the mortgagor in the premises covered by the mortgage, and would be entitled to have his legal rights adjudicated in a court of law.

---

The Chancellor's opinion contains a sufficient statement of the material facts.

*Depue,* for complainants, cited—

I. On the question of Mrs. Hoagland's right to have the land sold to satisfy arrearages of the income of the land devised to her by her husband. 2 *Jarman* 534 ; *Dixon* v. *Wilkinson*, 26 *Eng. Law and Eq. R.* 454 ; 2 *Roper on Legacies* 1485 ; *Coote on Mortgages* 148 ; *Ram. on Assets* 39.

II. The giving of the receipt turns the charge into a debt, and they have no right to resort to the real estate for payment. *Hutchinson* v. *Massarene*, 2 *Ball & B.* 49 ; *Carter* v. *Barnadiston*, 1 *P. W.* 518 ; 1 *Roper on Legacies* 746 ; *Clason* v. *Lawrence*, 3 *Edwards' Ch.* 48 ; *Sims* v. *Sims*, 2 *Stock.* 161.

III. As to the effect of the conveyance by Mrs. Van Buskirk to Davis and wife.

In this case the effect of the deed must be determined on the face of the instrument. Evidence of intent is not competent. *Broom's Legal Maxims* 266.

If the deed is to be reformed, a bill must be filed for that purpose. Complainants cannot be prejudiced by a mistake in the deed without notice of the equity. 4 *Greenleaf's Cruise* 242, 244, 259; *Jackson* v. *Hudson*, 3 *Johnson's R.* 375 ; *Bacon's Abr.,* " *Release"* 4 ; *Coke Litt.* 272, *c,* § 465 ; *Ibid.* 93, *c,* § 305.

*P. B. Kennedy* and *Shipman,* for defendants.

The taking a note and giving a receipt in full for the arrears of income do not extinguish the charge. *Tobey* v *Barber,* 5 *Johns.* 68 ; *Schermerhorn* v. *Loines,* 7 *Johns.* 311–13 ; *Johnson* v. *Weed,* 9 *Ibid.* 311.

As to the right of Davis to mortgage the property conveyed to him and his wife jointly. *Meeks* v. *Hayes,* 3 *Serg. & Watts,* 520 ; *Den* v. *Hardenburg,* 5 *Halst.* 41 ; *Jackson* v. *McConnell,* 19 *Wend.* 175–8 ; *Jackson* v. *Stevens,* 16 *Johns.* 109–10 ; *Jackson* v. *Cary, Ibid.* 303.

The devise to Mrs. Hoagland of half the yearly income gave her an estate in the land. *Den* v. *Manners, Spencer* 144 ; *Reed* v. *Reed,* 9 *Mass.* 372 ; *Wright* v. *Barrett,* 13 *Pick.* 41 ; *Holmes* v. *Holmes,* 2 *Wharton* 283.

THE CHANCELLOR. The bill is filed to foreclose two mortgages, one given by Jehu H. Davis and Mary Ann his wife to the complainants, bearing date on the fifth of May, 1859, to secure a bond of even date, given by the mortgagers jointly, in the penal sum of $1000, conditioned for the payment by them, or either of them, of the sum of $500, on the fifth of September, 1859 ; the other, given by Davis alone, bearing date on the first of June, 1860, to secure a bond of even date, given by him, conditioned for the payment of $1900, within three months from the date thereof, with interest. The mortgage for $500 is admitted to be a subsisting encumbrance. The only question touching this mortgage relates to the appropriation of a payment of $141.25, being the amount of a bill for the board of one of the complainants and his family at the house of the defendant in 1859. The only evidence of an appropriation of this sum by

the debtor to the mortgage debt is the defendants' book of original entries, in which is written, at the foot of the account, the words, "paid by credit on mortgage." The memorandum bears no date, nor is it shown when it was made. For all that appears, it may have been made since the commencement of this suit. The bill itself, with the defendants' receipt upon it, under date of August fifteenth, 1859, the day on which the charge terminates, is produced in evidence. The memorandum in the book is not found in the receipt, nor is there any intimation that the amount was to be appropriated to the payment of the mortgage debt. That the defendant himself had no such understanding of the application of the payment is manifest from the fact, that on the twenty-first of May, 1861, he paid, by the hands of his wife, $60 for two years' interest on the amount of the bond, as originally given. The evidence, on the other hand, is explicit, that at the time the bill was receipted, it was expressly agreed that the amount should be appropriated towards the payment of another debt ; and it was so appropriated by the complainant soon after the transaction, as appears by the entries upon his book and by the evidence of his clerk. The rule is well settled, that where a partial payment is made by a person indebted on more than one account, if there has been no actual appropriation by the debtor at or before the time of payment, the creditor may apply it as he pleases. 1 *Am. Lead. Cas.* (*ed.* 1857) 276, 278, and cases there cited.

The amount of the indebtedness cannot, therefore, be applied as a payment upon the first mortgage.

The result would have been the same had there been no parol evidence upon the subject. A bill for board, or any other demand that the debtor may have, cannot be set off against a mortgage debt upon proceedings for foreclosure, except by consent of the complainant or by agreement of the parties for that purpose. *Adm'rs of White* v. *Williams*, 2 *Green's C. R.* 383 ; *Dolman* v. *Cook*, *Ante* 56.

It is claimed that the second mortgage is satisfied by a sale of property to the complainants, which was accepted in

payment of the debt. It appears in evidence that, on the second of May, 1859, the defendant was indebted to the complainants, upon a judgment by confession in the Supreme Court of New York, for $2886.90 ; that a part of this debt, $600, was due for money lent, the balance being for goods sold and interest. The defendant then was, or lately had been engaged in business in the city of New York, and was desirous of making arrangements to keep a hotel at Lake. Hopatcong, in this state. He was embarrassed with debt, and needed funds to carry his purposed arrangement into execution. Under these circumstances, he applied to the complainants for a loan of $500, which was agreed to be made upon condition that the proposed loan should be secured by a mortgage upon real estate, and that of the existing debt ($600), the amount due for money lent, together with fifty per cent. of the balance, should be secured by a chattel mortgage or otherwise. In pursuance of this arrangement, on the fourth of May, 1859, the defendant executed a bill of sale to the complainants, for the consideration expressed of $2892, of a large amount of household and kitchen furniture then in his dwelling, and certain live stock then at Lake Hopatcong. On the first of June, 1860, the bond and mortgage in question for $1900 was given, and on the same day the defendant gave to the complainants, for the consideration expressed of $400, another bill of sale, for certain property not included in the first bill of sale, upon the premises known as the Lake Hopatcong house, where the defendant then lived. In March, 1861, a part of these goods were removed by the complainants from the defendants' premises, and sold, partly at auction and partly at private sale. The net proceeds of the sales are credited as a payment upon the mortgage debt. The defendant insists that the bill of sale of the fourteenth of May, 1859, was not only absolute in its terms, but was understood and intended by the parties as an absolute sale in payment of the mortgage debt. This allegation is in direct conflict with the admitted facts of the case, and all the presumptions arising from them. It is admitted

that the mortgage of the first of June, 1860, for $1900, and the bill of sale of that date, were intended as security for the same debt that formed the consideration of the bill of sale given on the fourth of May, 1859.

If the bill of sale was absolute, and taken in payment of the debt which formed its consideration, why were other securities subsequently given for the same debt? Why was a bill of sale taken for other chattels in the defendant's possession, if the design of the mortgage was, as the defendant alleges, merely to secure the forthcoming of the chattels included in the first bill of sale? Why should the defendant sell all the household and kitchen furniture of his hotel, when the very design of the whole arrangement was to enable him to keep the house? Why should a mercantile firm in the city of New York purchase the furniture of a country hotel, with its stock of horses, cattle, pigs, and farming utensils? Why was the debt left outstanding, and no receipt given for its payment? Why was the defendant permitted to retain the possession and enjoyment of the property, without compensation for its use and consequent deterioration? Why should the defendant furnish at the time of the transaction (as it is shown he did) an affidavit that the property was in his possession, and that it was worth $1500? Why should the complainants have taken the defendant's household furniture, which he valued at $1500, and of which the complainants had no knowledge, in payment of a debt of much larger amount?

The admitted facts of the case are of themselves sufficient to overcome the allegations of the answer and the evidence of the defendant upon this subject, even if his testimony was admissible. But the direct testimony of the counsel, by whom the papers were prepared, clearly establishes the real truth of the case. They prove that both the bills of sale, though absolute upon their face, were given and intended as chattel mortgages to secure the payment of the debt.

No question is or can be made in respect of the right of the mortgagees to remove the chattels from the defendant's

possession, for it was done with his consent. But it is objected that the chattels were sold below their value, that the place of sale was injudiciously chosen, and that the complainants are therefore bound to credit the defendant with the full value of the chattels sold. Both chattel mortgages being in terms absolute, containing no condition expressed, it becomes a question, whether in point of fact they were forfeited, and whether, consequently, the complainants had any right to sell at the time the sale was made. Mr. Hurst, the counsel, by whom the first bill of sale was prepared, says : " I understood that Mr. Davis had the right to redeem the property by paying the money as agreed upon by way of compromise, as was supposed he would be able to do if successful in his operations at Lake Hopatcong. *No time was fixed for such redemption to my knowledge.*" Nor does the complainants' own evidence show that any time was then specified for the payment of the debt. The legal presumption, that where no time for payment is specified, the debt is due upon demand, would seem incompatible with the entire purpose and design of the arrangement. But all difficulty upon this point is removed by the fact, that on the first of June, 1860, the date of the second bill of sale, the defendant gave a bond for the payment of the same debt in three months, which matured on the first of September, 1860, long prior to the sale of the goods. It is immaterial, therefore, whether any time was specified for the redemption of the debt at the giving of the original mortgage. By the terms of the subsequent contract, the debt matured, and the mortgage was forfeited before the sale of the goods.

After forfeiture, a mortgagee in possession may make sale of the chattels mortgaged upon due notice thereof to the mortgagor. But the creditor will be held, at his peril, to deal fairly and justly with the property, both as to the time of the notice and the manner of the sale. 2 *Story's Eq. Jur.*, § 1031 ; *Story on Bailments*, § 310, and *note* 4 ; 2 *Kent's Com.* 583.

The complainants were therefore authorized to sell the

goods. The evidence warrants the conclusion that the sale was made upon full notice to the defendant personally, and opportunity afforded him to redeem ; that the sale was duly advertised, and was in all respects fair, the goods being sold for the best price that could be obtained. The defendant can only claim to be credited with the net proceeds of the sales.

The disposition of a part of the chattels at private sale was unauthorized. Upon the evidence now before the court, it appears that great pains were taken by the complainants to secure the best prices practicable, and that they were sold for their value. It further appears that the mortgagor assented to the prices at which the articles were disposed of as a fair valuation. If, however, the defendant can show before the master that the articles were sold unfairly, and at an under price, he will be permitted to do so, and will be allowed their fair value. So, also, he will be permitted to show that the commissions and charges made upon the sales at auction were unusual or exorbitant.

The claim of the mortgagor, that he should be credited with the value of chattels which were disposed of by the mortgagees without his consent, is without foundation. It appears, by the evidence, that when the property mortgaged was taken by the mortgagees from the possession of the mortgagor part of it could not be found. Part of it was regarded as not worth removing. Other portions of it were claimed by the wife and daughter of the mortgagor, in his presence, as belonging to them, and as absolutely necessary to enable them to keep house. These articles were left in the defendant's possession and under his control. The interest of the mortgagees in them was subsequently transferred to the wife and daughter of the mortgagor. The whole arrangement was obviously for his interest, and must be presumed, under the circumstances, to have been made with his consent and approbation. The mortgagees received no consideration for the transfer.

Margaret Hoagland is made a defendant to the bill, as a prior encumbrancer under the will of her husband, James

Hoagland. He died, seized of the premises in question, in 1846. By his will, duly executed to pass real estate, he gave and devised, among other things, as follows : " I give and bequeath unto my beloved wife, Margaret Hoagland, the one half of the yearly income of all my real estate, to be paid to her yearly and every year during her natural life, to be paid by my heirs, or their lawful representatives, to whom the real estate is devised, being given in lieu and instead of her right of dower." The real estate, by subsequent clauses of the will, was devised to the children of the testator, " subject to the provisions made for their mother."

I do not understand it to be questioned that the provision for the widow constitutes a charge upon the land devised. If it were otherwise doubtful, the fact that it is given in lieu of dower would be decisive of the question.

The widow takes no immediate interest in the land by virtue of the gift of the rents and profits, upon the principle, that a devise of the rents and profits is in effect a devise of the land. *Den* v. *Manners, Spencer* 144 ; *Reed* v. *Reed,* 9 *Mass.* 372.

The gift is not direct to the widow. The *money* is to be *paid* to her by the devisees. She is not entitled to receive, as landlord, half of the rents nor half of the produce of the land, but half of the yearly income is to be paid to her by the devisees or their lawful representatives. The land must be sold subject to the charge of the annual payments hereafter to accrue to the widow during her life. She is entitled to receive, out of the proceeds of the sale of the devisee's estate in the land, the arrears (if any) remaining unpaid. It is undoubtedly true that where the land is devised over after the expiration of the term of the first tenant, the arrears of the annual income cannot be thrown upon the estate of the devisee in remainder. Nor, where the rents and profits are given in trust, and are paid to the trustee, can they be charged again upon the estate. But this case does not fall within the operation of either of these principles. It must be referred to a master to take an account of what

is due, if anything, to the widow, for the arrears of the annual income bequeathed to her.

The only question now to be decided is, whether the evidence shows conclusively that all the arrears have been paid, so that no account should be taken. The complainants produce in evidence a receipt of Margaret D. Hoagland, in full of her right in the land up to the first of April, 1861. As against the tenant, the receipt may be explained, and it may be shown, as the defendant has attempted to do, that in point of fact the money was not paid. If the original loan had been obtained upon the faith of this receipt, or if the receipt had been used to obtain an extension of credit, or in any other way to influence the conduct of the complainants, and the complainants had acted upon the faith of the receipt, it would operate as an equitable estoppel, and the party giving it would not be permitted to gainsay its terms to the prejudice of the complainants' rights. The receipt is dated on the ninth of July, 1861, after the mortgage was forfeited, and a short time before the filing of the bill of complaint. It was sent to the complainants' attorney on the tenth of July, the day after its date. From Davis' note accompanying the receipt it would seem that it was required by the complainants. It was probably procured at their instance, but for what purpose does not appear. If it was procured at the instance of the complainants, merely to be used as evidence in their behalf, and in no way influenced their conduct or operated to their prejudice as mortgagees, it is not conclusive against the party signing it. She will be at liberty, before the master, to prove the arrears of rent actually due and unpaid. The giving of notes by Davis and the taking of receipts did not of necessity operate as a discharge of the encumbrance upon the land.

The testimony of Davis does not vary the result of the case. He is manifestly in error in regard to several points to which he testifies. But his evidence is clearly incompetent. He is testifying in behalf of his wife in a cause in which she is a party. The rule excluding husband and wife

from being witnesses for or against each other does not rest solely or mainly upon their identity of interest, but upon grounds of public policy. Their competency as witnesses is not affected by the act of 1859. (*Nix. Dig.* 558): That act was designed solely to remove the disqualification resulting from interest in the event of the suit.

If the point admitted of any doubt upon the terms of the statute, it was authoritatively settled by the decision of the Supreme Court, at their last term, in the case of *Handlong and Wife* v. *Barnes.*

The question was discussed upon the argument, whether the husband had any, and if any what interest in the mortgaged premises which could be sold by virtue of a mortgage executed by himself alone. The land mortgaged is the property of the wife, having been devised to her during coverture by her father. The will was admitted to probate in 1846. The testator devised to his daughters, Sarah Van Buskirk, wife of Daniel Van Buskirk, and Mary Ann Davis, wife of Jehu H. Davis, in fee, all the remainder of his real estate, to be equally divided in value, share and share alike, subject to the provision made for their mother.

The bill charges that, in 1854, Sarah Van Buskirk, one of the devisees (her husband being dead), by deed duly executed by herself and her son, Aaron Van Buskirk, conveyed the mortgaged premises, being a part of the land so devised, to Davis and wife, to have and to hold the same to their proper use, benefit, and behoof for ever. It is not pretended that any consideration was paid for this conveyance, or that Aaron Van Buskirk had any interest in the land conveyed.

The answer of Davis and wife alleges that a parol partition of the lands devised was made, in the year 1848, by the husbands of the devisees, acting as the agents of their respective wives ; that the shares so allotted were accepted by the devisees as their respective shares ; that they have since been held in severalty ; and that Sarah Van Buskirk thereby ceased to have any interest in the land apportioned to the wife of the defendant. They admit the execution of the

deed, but allege that Sarah Van Buskirk had no interest in the premises which she could convey ; that the design of the deed was simply to ratify the partition already made, and that the wife has never conveyed to her husband any title to the real estate devised to her. It is obvious that this state of facts presents important questions for consideration ; but they cannot be decided in this suit, even by consent of parties.

Upon a bill to foreclose, the *mortgager* cannot dispute his title to the mortgaged premises. The decree will bind *his* interest, whatever it may be, and nothing more.

The decree upon the mortgage, executed by the husband alone, will not bind the separate estate of the wife, although the wife is made a defendant, and has joined with him in an answer. The rule is, that if the husband and wife join in an answer as co-defendants, it will be considered as the defence of the husband alone. And it will not affect a future claim by the wife in respect of her separate interest. *Mole* v. *Smith*, 1 *Jac. & W.* 648 ; *Hughes* v. *Evans*, 1 *Sim. & Stu.* 185 ; 1 *Daniell's Ch. Prac.* 142 ; *Johnson* v. *Vail*, *Ante* 423.

Nor would the opinion of this court upon the question of title bind the purchaser under the decree. He would take the title of the mortgagor in the premises covered by the mortgage, and would be entitled to have his legal rights adjudicated in a court of law.

Any opinion, therefore, which the court might give upon this question would be unavailing for any practical purpose. If the premises should be sold by virtue of a decree under the first mortgage, which is executed by both husband and wife, the rights of the parties under the second mortgage to the surplus proceeds of the sale may be readily settled in this court. If there be no surplus after satisfying the first mortgage, the controversy touching the rights under the second mortgage can be of no practical interest. If it should be found necessary or expedient to sell under the second mortgage, it will then become necessary for the wife, in order to the protection of her rights, to bring her case before the court in proper form for its adjudication.

I make these suggestions, that they may be borne in mind in framing the final decree. Counsel will be heard upon that subject, if they so desire.

The complainants are entitled to relief and to a reference to a master.

CITED *in Marshman* v. *Conklin*, 2 *C. E. Gr.* 285 *and* 288 ; *Staats* v. *Bergen*, 2 *C. E. Gr.* 303 ; *Cramer* v. *Reford*, 2 *C. E. Gr.* 384 ; *Galway* v. *Fullerton*, 2 *C. E. Gr.* 393 ; *Dudley* v. *Bergen*, 8 *C. E. Gr.* 401.